IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Catherine Zaborowski and Simone Jackson, individually and on behalf of a class, | ) ) ) | |
| *Plaintiffs*, | ) ) | No. 08 CV 6946 |
| vs. | ) ) | Judge St. Eve |
| Thomas Dart, Sheriff of Cook County and Cook County, Illinois | ) ) ) | |
| *Defendants*. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
THIRD MOTION FOR CLASS CERTIFICATION**

NOW COME Defendants SHERIFF THOMAS DART and COOK COUNTY, ILLINOIS, by and through their attorney ANITA ALVAREZ, State's Attorney of Cook County, by her assistant, Assistant State's Attorney, PAT SMITH, asking this court to again deny Plaintiffs' motion for class certification because the Plaintiffs still fail to meet the requirements of Fed. R. Civ. P. 23. In support, the Defendants state as follows:

**I. INTRODUCTION**

The onus of demonstrating that "a class action is superior to other available methods for fairly and efficiently adjudicating [this] controversy" lies solely with the Plaintiffs. Fed. R. Civ. P. 23(b)(3); *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008). This is Plaintiffs' third attempt to have the same class certified in this case. (*See* Dkts. 26; 66; 76.) The three motions do not differ in substance aside from the suggested number of class members in each subsequent damages action following a favorable finding on liability. Plaintiffs first proposed that each class member have an individual trial for determining her individual damages. Now Plaintiffs propose that the class members be joined into groups of seven to ten and each group will have a

1

combined damages trial. However, this latest motion suffers from the same defects as Plaintiffs' first motion, which was denied by this court on December 9, 2009. (*See* Dkt. 58.) Plaintiff petitioned to appeal this Court's denial of the first motion; the Seventh Circuit denied the petition. (*See* Dkt. 65.) Plaintiffs still fail to comprehend that these lawsuits, where individualized issues are critical to elements of both liability and damages, are not appropriate for class treatment. The motion for class certification should again be denied.

Rule 23(b)(3) permits Plaintiffs' case to proceed as a class action only where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The two elements of predominance and superiority must each be met. *See In re Hotel Tel. Charges*, 500 F.2d 86, 88 (9th Cir. 1974). Plaintiffs have not, indeed they cannot, satisfy either element.

## II. ANALYSIS

### A. Personalized Determinations Are Still Necessary to Find Liability In This Case; Therefore, Class Issues Do Not Predominate Over Individual Issues.

"At its essence, predominance is concerned with whether the putative named plaintiffs can, through their individualized cases, offer proof on a class-wide basis." *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390, 398 (N.D. Ill. 2006). The issues in Plaintiffs' alleged class do not predominate over individual issues because their proposed class definition requires individual determinations on the most significant issues in order to find liability against the Defendants.

Federal Rule of Civil Procedure 23(b)(3)'s predominance inquiry determines whether a proposed class is sufficiently cohesive to warrant representation by class action. *Amchem Prods. Inc., v. Windsor*, 521 U.S. 591, 623 (1997). When a proposed class does not meet the requirements of Rules 23(b)(1) or (b)(2), "Rule 23(b)(3) permits certification where class suit

'may nevertheless be convenient and desirable.'" *Id.* at 614 (quoting Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure*, 81 Harv. L. Rev. 356, 375-400 (1967)). An invocation of Rule 23(b)(3) "invites a close look at the case before it is accepted as a class action . . . ." *Id.* at 615. Common questions must predominate over any questions affecting individual members of a proposed class. *Id.* "A plaintiff has the burden of proving that a case is appropriately a class action and meets all the requirements of Rule 23." *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir. 1976).

Plaintiffs allege that Defendant Sheriff of Cook County implemented a policy that "all pregnant women in his custody be shackled during labor and during recovery following labor." (Dkt. 75 at 9.) However, Plaintiffs have never produced this policy. The written policy of the Sheriff during the period between December 2006 and October 2008 exempted pregnant women from the general policy of restraining detainees who were transported outside the jail. (*See* Attach. 1 ("**NO** handcuffs, leg irons, or waist chains shall be used on a female inmate (detainee) who is in labor, this includes while being transported to the medical facility.") (capitalization, emphasis in original).) The policy in effect from October 2008 through January 2010 contained identical language. (*See* Attach. 2.) The purported class members were in the custody of the Sheriff during the two periods the above policies were in effect. In fact, Plaintiffs base their motion for class certification on a policy that has *never* been implemented by Defendants or their subordinates. The Sheriff's actual policies do not appear to be at issue in this case.

Defendants agree with the line in Plaintiffs' memorandum extracted from *Siegel v. Shell Oil Co.* stating that when "determining if a plaintiff has met the predominance requirement, district courts look beyond the pleadings to determine whether the plaintiff's claims are subject to class-wide proof by common evidence." (Dkt. 75 at 9 (quoting *Siegel*, 2009 U.S. Dist. LEXIS

13520, *8 (N.D. Ill. Feb 23, 2009) (St. Eve).) Yet, Plaintiffs omit the very next line, "[i]n other words, 'predominance is concerned with whether the putative named plaintiffs can, *through their individualized cases*, offer proof on a class-wide basis.'" *Siegel*, 2009 U.S. Dist. LEXIS 13520, *8-9 (quoting *Hyderi*, 235 F.R.D. at 398 (N.D. Ill. 2006)) (emphasis added).

Members of the purported class were allegedly restrained for different amounts of time, in different ways, and at different periods. *See Amchem Prods. Inc., v. Windsor*, 521 U.S. 591, 615 (1997) (affirming denial of class certification because the proposed class failed predominance where members of the proposed class were exposed to asbestos "for different amounts of time, in different ways, and over different periods"); *see also Harper v. Sheriff of Cook County*, 581 F.3d 511, 514-515 (7th Cir. 2009) (holding that common issues did not predominate where pre-trial detainees alleged they were held for too long after bond was posted because liability must be determined on an individual basis since the policy's constitutionality depended on individual factors, including length of time detainee was held after bonding, permissible delays in the release process on a given day, and the detainee's level of cooperation).

The proposed class requires an even greater level of individual determination than was needed in *Harper* and *Amchem*. Here, differences between the claims of the purported class's members extend beyond issues of duration, manner, and timing of the alleged restraint. Determining how the Sheriff's policy was applied to each class member also requires an inquiry into the woman's medical condition at the time she was allegedly restrained (particularly, whether she was in labor), her risk of flight, and her risk of danger to herself or others.

Plaintiffs' proposed class covers women who were shackled "during labor. . ." (Dkt. 76 at 1). However, Plaintiffs' fail to define "labor" or suggest a methodology to determine whether a given plaintiff was in labor at the time she was allegedly restrained. "Labor" is a specific

4

medical condition that the Sheriff's non-medical personnel are not qualified to diagnose. Before this case reaches trial, *each* purported class member will need to prove, likely through the testimony of the attending medical personnel, that she was in labor during the time she alleges that she was restrained. If she was restrained, but not in "labor, delivery, or recovery following delivery" at the time, then she cannot be part of Plaintiffs' proposed class, even if she has a cognizable claim for relief.

Although the Eighth Amendment only prohibits "cruel and unusual" punishment of prisoners, the Fourteenth Amendment's Due Process Clause affords greater protections to pre-trial detainees, the group at issue here. *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979). Plaintiffs cite *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000) to assert the premise that "shackling is unconstitutional" for detainees. (Dkt. 75 at 9.) However, *May* does not establish that rule *per se*.

In *May*, the Seventh Circuit set forth a test for Due Process rights of pre-trial detainees as they relate to restraints. "The use of bodily restraints constitutes punishment in the constitutional sense if their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve." *May*, 266 F.3d at 884. The purpose and excessiveness of restraint, if any, will vary from detainee to detainee based upon her individual circumstances and the manner, timing, and duration of application of restraints to her. If the proposed class is certified, *May* will require the finder of fact to make individualized findings on the allegations of each class member in order to find liability.

Plaintiffs have failed to demonstrate how the class jury can determine whether putative class members were the victims of a constitutional violation by any method other than a case-by-case basis. As the Seventh Circuit noted in *Harper v. Sheriff of Cook County*, "claiming that an issue predominates does not make it so." 581 F.3d 511, 515 (7th Cir. 2009). Plaintiffs *claim* that

5

the common issues of the proposed class predominate over the individual issues, but fail to elaborate on or explain that conclusion in any way. (Dkt. 75 at 8-9.) To find even liability, much less damages, individual determinations will be required for every member of the proposed class; for this reason, the common issues do not predominate over the individual issues, and the proposed class cannot not meet the predominance requirement of Rule 23(b)(3).

Even if the alleged 'shackling policy' were "common to all class members, its effect and its role in causing the injuries alleged will necessarily vary from plaintiff to plaintiff." *Smith v. Sheriff of Cook County*, 07 CV 03659, 2008 U.S. Dist. LEXIS 60248, *3 (N.D. Ill. July 16, 2008) (Judge Leinenweber) (denying motion to reconsider denial of class certification in § 1983 suit where common issues of fact about an alleged policy were inextricably linked with facts of individual cases). Plaintiffs intend to "offer proof on a class-wide basis." (Dkt. 75 at 9 (quoting *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390, 398 (N.D. Ill. 2006).) However, this feat is simply impossible when the two named Plaintiffs are not capable of giving any information about the unnamed class members; the manner, purpose, duration, timing, and apparent excess of restraint of the unnamed class members; nor whether the unnamed class members were in active labor at the time of their alleged restraint.

### B. A Class Action Is Not A Superior Way Of Resolving These Claims.

1. Damages Sought are Not Nominal

In denying Plaintiffs' first motion for certification, this Court noted that the Plaintiffs are requesting more than just "nominal damages" and this request cuts against the superiority requirement. (Dkt. 58 at 6 (citing *Jackson v. Nat. Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2006)).) Where only nominal damages are at stake, there is little incentive for each claimant to file a federal lawsuit to recover a pittance; there, a class action may be a superior tool

to allow recovery while keeping the claimants' overall costs down. *Jackson*, 227 F.R.D. at 290. However, this is not a nominal damages case. (Dkt. 58, at 6.)

In fact, the non-existence of a class has not been a deterrent to new filings. To date, Plaintiffs' counsel have filed at least 19 other individual cases against the Sheriff in the Northern District of Illinois on behalf of women who are allegedly members of the proposed class. *See Bryant v. Sheriff of Cook County*, 09 CV 1546 (Judge Gottschall); *Embry v. Dart*, 09 CV 3470 (Gettleman); *Morales v. Dart*, 09 CV 3546 (Kennelley); *Lee v. Dart*, 09 CV 7789 (Leinenweber); *Sidney v. Dart* 09 CV 7790 (Andersen); *Smith v. Dart*, 09 CV 7791 (Conlon); *Vitiritti v. Dart*, 09 CV 7792 (Kennelley); *Fletcher v. Dart*, 10 CV 139 (Hibbler); *Farrar v. Dart*, 10 CV 333 (Gottschall); *Blair v. Dart*, 10 CV 2968 (St. Eve); *Ligon v. Dart*, 10 CV 2969 (Gottschall); *Walton v. Dart*, 10 CV 2970 (Hibbler); *Johnson v. Dart*, 10 CV 2998 (Andersen); *Brown v. Dart*, 10 CV 2999 (Hibbler); *Richardson v. Dart*, 10 CV 3000 (Aspen); *Carmona v. Dart*, 10 CV 3001 (Leinenweber); *Cruz v. Dart*, 10 CV 3042 (Andersen); *Oss v. Dart*, 10 CV 3078 (Shadur); *Coffer v. Dart*, 10 CV 3114 (St. Eve).

The purported class members, and Plaintiffs' counsel, are clearly content with filing individual suits. Most of these cases seek judgment "in an amount in excess of one hundred thousand dollars as compensatory damages and in an amount in excess of one hundred thousand dollars as punitive damages." *See, e.g.*, *Brown*, 10 CV 2999 (Dkt. 1 at 5, Complaint, Filed May 14, 2010).

Furthermore, non-existence of a class has not prevented resolution of these disputes. The cases of *Embry*, 09 CV 3470; *Morales*, 09 CV 3546; *Vitiritti*, 09 CV 7792; and *Smith*, 09 CV 7791, have been settled and are in the process of termination. Other cases are in the process of settlement negotiation, discovery, or trial preparation. "It is proper to infer from the number of

7

individual claims that have been brought that many potential class members prefer to maintain separate actions to pursue their claims." *Abby v. City of Detroit*, 218 F.R.D. 544, 549 (E.D. Mich. 2003) (holding superiority lacking where the proposed class members clearly had a strong interest in controlling and maintaining separate actions, as evidenced by more than 100 plaintiffs (from a putative class of "hundreds") filing individual suits) (citing *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir. 2001)).

2. <u>Plaintiffs' Proposal for Multiple-Plaintiff Damages Trials Does Not Cure the Defects This Court Identified in Denying the First Motion For Class Certification.</u>

The primary purposes of the class action are judicial economy and efficiency. *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008). This Court denied Plaintiffs' first motion for class certification in part because their initial plan for the class would not have promoted judicial economy or efficiency and was, thus, not a superior way of litigating the dispute. (Dkt. 58 at 5-6.) Plaintiffs initially proposed that the class would be certified solely to litigate the issues related to liability; then each class member would have prove their own damages in a subsequent, individual action. This Court found that the gains from consolidating the claims would not outweigh the necessary follow-up procedures. (*Id.* (citing *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390, 406 (N.D. Ill. 2006)).) Plaintiffs' new proposal suffers the same problem.

Plaintiffs' new proposal is to certify the class for liability issues (as before), then, rather than having damages litigated in individual follow-on suits, they wish to have between seven and ten follow-on suits with groups of class members.[1] However, it is fallacy to think that reducing the number of follow-on suits will reduce the case-management problems to a similar degree.

Although Plaintiffs' proposal will require fewer juries for the follow-on suits than their initial proposal did, each jury under the new motion will hear seven to ten times as many distinct

---

[1] Estimate based on the current purported size of the class (64) with seven to ten members in each follow-on suit.

pieces of information. Because damages in this case will be highly individualistic—turning on the timing, duration, manner, severity, purpose, and excessiveness of restraint for each claimant—it will be necessary to call each claimant to testify about her experiences. In order to protect the Defendants' rights, defense counsel will also likely need to call rebuttal witnesses for each claimant, including the Sheriff's officers and medical personnel who personally witnessed the claimant's situation.

Presenting up to ten similar stories, which are, nonetheless, distinct in many important ways, to a single jury simply begs the jurors to mix-up the fact patterns and to decide damages for one claimant based on unique, but seemingly worse, treatment suffered by a co-claimant. Further, the only time saved will come from selecting fewer juries; the same information and testimony must be presented to each jury as would be presented in an individual proceeding. In fact, the Plaintiffs have already admitted that, "[d]amages are extremely individual in this case and cannot be resolved on a class basis or in a single proceeding." (Dkt. 39 at 1, Plaintiffs' Response to Defendants' Motion for Reassignment.) Defendants wholeheartedly agree.

    3. <u>Plaintiffs' New Proposal Will Be Difficult to Manage</u>

As part of the superiority determination, Rule 23(b)(3)(D) requires this Court to analyze "the likely difficulties in managing a class action." The only difference in Plaintiffs' new motion from the first motion is that instead of juries hearing one follow-on case each, Plaintiffs now want each jury to hear a batch of up to ten follow-on cases simultaneously. Plaintiffs' proposal is simply unworkable. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1278 (11th Cir. 2009) (finding "serious challenges to the efficiency and manageability of a class action proceeding" where trial "would require the presentation of a substantial amount of evidence specific to each of an unknown number of class members.").

Because each follow-on plaintiff will have to testify about her individual damages, and Defendants will likely call rebuttal witnesses for each plaintiff, *each* of these follow-on cases will last seven to ten times as long as a single one would. Even if there is some small gain from consolidating the follow-on proceedings, this advantage will be substantially outweighed by the likely confusion of the jurors and the scheduling difficulties incumbent on this Court and the attorneys handling the follow-on cases.

**C. Plaintiffs' Counsel Are Not Sufficiently Competent to Manage This Class Action.**

In denying the first motion for class certification, this Court noted that "[i]t is undisputed that Plaintiffs' counsel is qualified." (Dkt. 58 at 4.) Defendants now dispute the qualifications and competence of Plaintiffs' counsel. In this case, as well as others in the purported class, Plaintiffs' counsel, Thomas Morrissey and Kenneth Flaxman, have missed key deadlines, violated court orders, and wasted the time of defense counsel and the court with frivolity.

In front of this Court, in support of their Response to Defendants' Motion for Reassignment, Morrissey and Flaxman stated that they planned to file a motion for summary judgment in the related case of *Bryant v. Sheriff of Cook County*, 09-cv-1546 (Judge Gottschall), by August 24, 2009. (*Zaborowski*, Dkt. 39 at 2.) Their averment of intent to file for summary judgment in *Bryant* was designed to show this Court that reassignment of these cases would be improper because they are at substantially different stages in the litigation process. This Court appeared to rely on that averment, at least in part, for its denial of Defendants' motion to reassign. (*See Zaborowski*, Dkt. 47 at 2.) On December 9, 2009, in front of Judge Gottschall, Morrissey and Flaxman stated that they would be moving for summary judgment on *Bryant* and were given 37 days (until January 15, 2010) to do so. (*See Bryant*, 09-cv-1546, Dkt. 31, Minute Entry by Judge Gottschall on Dec. 9, 2009.) However, no summary judgment motion has ever

10

been filed in *Bryant* and Morrissey and Flaxman have done nothing to further prosecution of the case since December 9, 2009. Put simply, they have dropped the ball.

In this case, Morrissey and Flaxman violated two important provisions of Magistrate Judge Maria Valdez' rules for settlement conferences. (*See* Dkt. 78, Defendants' Motion for Sanctions.) Plaintiffs and Defendants were scheduled to appear before Judge Valdez on May 11, 2010 to allow the judge to facilitate settlement negotiations. (*See* Dkt. 69, Minute Order by Judge Valdez of March 29, 2010). Although Judge Valdez' standing orders for settlement conferences clearly required that the Plaintiffs personally attend the conference, neither one did. *See* Magistrate Judge Maria Valdez, *Instructions for Settlement Conference*, http://www.ilnd.uscourts.gov/JUDGE/VALDEZ/valdez_setcon.pdf, at 2 (accessed May 17, 2009). (Dkt. 77, Minute Entry by Judge Valdez of May 11, 2010.) Because of the Plaintiffs' absence, no negotiation could take place and the conference was aborted to avoid further wasting of defense counsel or the court's time.

Additionally, prior to the May 11 conference, Judge Valdez ordered the parties to submit a letter describing their negotiating position, including a "summary of the evidence and legal principles that plaintiff asserts will allow it to establish liability;" an "explanation of why damages or other relief would appropriately be granted at trial; . . . and a settlement demand." Valdez , *Instructions for Settlement Conference*, at 1 (numbering omitted). Plaintiffs' letter was due 14 days before the conference; Defendants' responsive letter was due 7 days later. *Id*.

Morrissey and Flaxman sent their letter to defense counsel more than a week late, on May 5, 2009, *after* the deadline for Defendants' letter. As a result, by the time Morrissey and Flaxman's letter arrived, Defendants had already submitted as responsive a letter as could be composed under the circumstances. Furthermore, Morrissey and Flaxman's letter was lacking all

four of the elements required by Judge Valdez' order without explanation for or even acknowledgment of the omissions.

Morrissey and Flaxman have already demonstrated that they are not adequate representatives of at least three class members (the two Plaintiffs here and plaintiff Bryant), and failed to participate in settlement negotiations adequately or in good faith. They should not be presumed competent enough to handle upwards of sixty similar cases simultaneously.

**D. The Named Plaintiffs Remain Inadequate Representatives of the Proposed Class.**

It is uncertain whether Plaintiffs have cured the conflict of interest problems identified by this Court when denying their first motion because Plaintiffs have remained vague in their description of the procedure for the follow-on cases. Simply citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468 (5th Cir. 1986), does not provide a clear description of what Plaintiffs are asking this Court to do once the damages phase is reached.[2] Plaintiffs have not submitted a detailed trial plan that would allow Defendants or this Court to fully analyze the particulars of their motion. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 n.20 (11th Cir. 2009) ("there is a direct correlation between the importance of a realistic, clear, detailed, and specific trial plan and the magnitude of the manageability problems a putative class action presents").

Furthermore, Defendants have become aware of another potential conflict of interest between the named Plaintiffs and the unnamed class members. At the aborted settlement conference with Magistrate Judge Valdez on May 11, 2010, (*See* Dkts. 69; 77; 78), Judge Valdez relayed Plaintiffs' settlement demand for the class to defense counsel. According to Judge

---

[2] Plaintiffs' sole description of their revised proposal is as follows: "Once the common liability question is determined, damages for each class-member could be resolved through a series of multiple-plaintiff trials, as in *Jenkins v. Raymark Industries, Inc.,* 782 F.2d 468 (5th Cir. 1986) (seven to ten plaintiffs), or (as is more likely), through settlement." (Dkt. 75, at 10-11.) Merely noting that this method "could" be used is not an argument in favor of using it, nor does this description give any helpful details about what specifically the Plaintiffs would like to see happen in the context of this case.

12

Valdez, Plaintiffs sought about half as much money for each of the unnamed class members as they requested for each of the two named Plaintiffs.

Seeking double the recovery of the unnamed members places the named Plaintiffs at odds with the class they seek to represent. *See, e.g., Drimmer v. WD-40 Co.*, 2007 U.S. Dist. LEXIS 62582, *7-8 (S.D. Cal. Aug. 24, 2007) (finding inadequate representation where would-be lead plaintiff refused to seek all available remedies for the other class members, thereby creating an "inference that Drimmer holds different priorities and litigation incentives than a typical class member"), *aff'd*, 343 Fed. App'x 219 (9th Cir. 2009) (unpublished).

In the context of class actions, lead plaintiffs who enter into agreements with counsel for specific incentives, or even an agreement to *request* specific incentives, can place themselves in conflict with the remainder of the class. "[A]greements of this sort infect the class action environment with the troubling appearance of shopping plaintiffships. If allowed, ex ante incentive agreements could tempt potential plaintiffs to sell their lawsuits to attorneys who are the highest bidders, and vice-versa." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 960 (9th Cir. 2009). (The *Rodriguez* Court held that Rule 23(a)(4) was only met in that case because some of the class members had their own counsel, who were not conflicted, and could protect the class, but that is not the case here. *Id*. at 961.)

"In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). In this case, the lead Plaintiffs are not entitled to an incentive award, and certainly not one double the size of the unnamed members' recovery, because they cannot have provided their attorneys with any substantial

information about the class as a whole; at best, they could only tell of their own personal experiences in the Sheriff's custody, which they would have had to pass along anyway for a non-class suit. *Cf. Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award (from total monetary recovery of over $13 million) where lead plaintiff "spent hundreds of hours with his attorneys and provided them with an 'abundance of information'" while "reasonably fear[ing] workplace retaliation" for his efforts with the lawsuit).

In any case, if the named Plaintiffs are seeking an incentive award in this case, they should be up-front about that fact to the other class members (so they may object, if they think the award sought is unreasonable, and so they may make a fully informed decision whether to opt-out of being represented by the named Plaintiffs) and to this Court (so that the Court has all the relevant information to make a proper Rule 23(a)(4) analysis of adequacy of representation). *See Rodriguez*, 563 F.3d 948, 959 (9th Cir. 2009) ("The arrangement was not disclosed when it should have been and where it was plainly relevant, at the class certification stage.").

### E. The Proposed Class Is Not Sufficiently Numerous.

Although Plaintiffs claim that the purported class numbers at least 60 members, and claim to have "identified" these members (Dkt. 75 at 6.), Defendants have *never* been given a list of the members' names. Plaintiffs have merely provided two lists of first names, but with last names redacted.[3] (Dkt. 46, at 96, Ex. 3; Dkt. 75, at 13, Ex. 1.) During the relevant time-period, on average, the Sheriff admitted more than 90,000 people each year to the Cook County Department of Corrections. To suggest that a list of first names alone would provide Defendants with adequate information to identify, let alone examine, the purported class members (for

---

[3] The reason for the redaction of last names is unclear. Fed. R. Civ. P 5.2 only authorizes redactions of social security numbers, taxpayer ID numbers, bank account numbers, birth date (except birth year), and names (except initials) of people known to be minors only. None of those criteria appear to met by the submitted lists. Plaintiffs' counsel have never provided an un-redacted copy of the lists to defense counsel nor explained the reasoning or authority for redaction.

14

example, to verify that they were in the Sheriff's custody, were pregnant, and meet the other criteria of membership in the class) is ridiculous. Plaintiffs should not be allowed to rely on what amounts to a list of sixty "Jane Does" to meet their burden of numerosity. For all the ability the Defendants have to investigate the purported class, Plaintiffs' counsel might as well say that there are tens of thousands of class members and file a phone book in support.

### III. CONCLUSION

Because Plaintiffs still fail to meet the requirements of Rules 23(a) and (b), their third motion for class certification should be denied. Defendants pray that this Honorable Court deny Plaintiffs' Amended Motion for Class Certification. (Dkt. 76.) Defendants further pray that this Court issue an order directing Plaintiffs and Plaintiff's counsel to pay Defendants' costs and attorney's fees for the time needed to respond to Plaintiff's motion.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

/s/ Patrick S. Smith
Patrick S. Smith
Deputy Supervisor
Conflicts Counsel Unit
69 W. Washington, 20th floor
Chicago, Il 60602
(312) 603-1422