# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 6946 | **DATE** | 6/22/2010 |
| **CASE TITLE** | Zaborowski et al vs. Sheriff of Cook County et al. | | |

**DOCKET ENTRY TEXT**

The Court grants Plaintiffs' Second Motion for Class Certification [76]. The Court will not entertain any motions for reconsideration as to this order because the parties have had ample opportunity to make their arguments.

■[ For further details see text below.]  Notices mailed by Judicial staff.

## STATEMENT

On January 28, 2009, Plaintiffs Catherine Zaborowski and Simone Jackson, on behalf of a class, filed an Amended Complaint alleging that Defendants Sheriff of Cook County and Cook County, Illinois have an unconstitutional policy pertaining to pregnant women in custody. *See* 42 U.S.C. § 1983. On December 9, 2009, the Court denied Plaintiffs' motion for class certification. The Court presumes familiarity with its December 9, 2009 order. In addition, on March 23, 2010, the United States Court of Appeals for the Seventh Circuit denied Plaintiffs' Federal Rule of Civil Procedure 23(f) petition for permission to appeal the Court's December 9, 2009 class certification order. Before the Court is Plaintiffs' Second Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23. For the following reasons, the Court grants Plaintiffs' motion. The Court will not entertain any motions for reconsideration as to this Second Motion for Class Certification because the parties have had ample opportunity to make their arguments.

## BACKGROUND

In their Amended Complaint, Plaintiffs allege that Zaborowski entered the Cook County Jail on June 3, 2008 and that Jackson entered the Jail on November 23, 2007. (R. 13-1, Amend. Compl. ¶ 4.) At the time they entered the Cook County Jail, both Zaborowski and Jackson were pregnant. (*Id*. ¶ 5.) Plaintiffs further allege that they were transferred from the Cook County Jail to the Sheriff's "MOM's" program, which is an off-site, residential treatment program run by the Haymarket Center. (*Id*. ¶ 6.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

Zaborowski went into labor on August 29, 2008, and her counselor from the Haymarket Center transported her to Stroger Hospital. (*Id*. ¶ 7.) Plaintiffs allege that following Zaborowski's arrival at Stroger Hospital, and in accordance with the Sheriff's alleged policy, deputy sheriffs shackled Zaborowski's hand and foot to the hospital bed. (*Id*. ¶ 8.) Zaborowski remained shackled hand and foot to the hospital bed for about eleven hours while she was in labor. (*Id*. ¶ 9.) An armed deputy sheriff remained in the hospital room during that time. (*Id*.) Immediately before giving birth, the attending physician requested that the deputy sheriff unshackle Zaborowski's foot. (*Id*. ¶ 10.) The deputy sheriff complied with the doctor's request and Zaborowski was shackled to the bed by one arm when she delivered her child on August 30, 2008. (*Id*.) Plaintiffs further allege that in accordance with the Sheriff's policy, the deputy sheriff then re-shackled Zaborowski's foot about an hour after she gave birth. (*Id*. ¶ 11.) Zaborowski remained at Stroger Hospital until the evening of the next day, September 1, 2008. (*Id*. ¶ 12.) During this time period, Zaborowski was shackled hand and foot to the hospital bed and was not permitted to use the toilet or to get up from the bed to walk. (*Id*.)

After Jackson went into labor on May 3, 2008, her counselor from the Haymarket Center took her to Stroger Hospital. (*Id*. ¶ 13.) Following her arrival at Stroger Hospital, and in accordance with the Sheriff's alleged policy, deputy sheriffs shackled Jackson's hand and foot to the hospital bed. (*Id*. ¶ 14.) Jackson remained shackled hand and foot while she was in labor and during birth. (*Id*. ¶ 15.) An armed deputy sheriff remained in the hospital room while she was in labor and delivered her child. (*Id*.) Jackson remained at Stroger Hospital for approximately four days during which Jackson was shackled hand and foot to the hospital bed and was not permitted to use the toilet or to get up from the bed to walk per the Sheriff's policies. (*Id*. ¶ 16.)

In the present motion for class certification, Plaintiffs seek to certify the following class: "All women in the custody of defendant Sheriff on and after December 4, 2006 who have been or who will be shackled during labor, delivery, or recovery following delivery." (R. 76-1, Mot. Class Cert., at 1.) Plaintiffs' counsel further explains that they were mistaken in their belief that each class member should receive a separate damages determination as counsel argued in the first class certification motion. (*Id*. at 2.) Instead, Plaintiffs seek class certification to adjudicate both liability and damages for all class members. (R. 75-1, Pls.' Mem., at 2.) To clarify, one of the Court's concerns when denying Plaintiffs' first class certification motion was the named Plaintiffs' conflicts in representing the putative class members if the Court were to allow approximately 50 subsequent lawsuits to determine each class member's damages. Plaintiffs now maintain that the damages in each case can be established through several separate proceedings in the instant lawsuit or through settlement. (*Id*. at 10.)

## LEGAL STANDARD

As the Supreme Court recently explained, Federal Rule of Civil Procedure 23 "[b]y its terms [] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 130 S.Ct. 1431, 1437 (2010). "[T]he primary purposes of the class-action mechanism" are "judicial economy and efficiency." *Andrews v. Chevy Chase Bank,* 545 F.3d 570, 577 (7th Cir. 2008). To that end, Rule 23(a) states that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *see also Harper v. Sheriff of Cook County,* 581 F.3d 511, 513 (7th Cir. 2009). Failure to meet any of these Rule 23(a) requirements precludes class certification. *See Harper,* 581 F.3d at 513; *Arreola v. Godinez,* 546 F.3d 788, 797 (7th Cir. 2008).

In addition to satisfying the requirements under Rule 23(a), a party seeking class certification must also establish that the proposed class satisfies one of the requirements set forth in Rule 23(b). *See Amchem Prods.,*

*Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Arreola,* 546 F.3d at 794. Here, Plaintiffs request certification of the proposed class pursuant to Rule 23(b)(3), which applies when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3); *see also Amchem Prods.*, 521 U.S. at 615-16.

The party seeking class certification has the burden of establishing that certification is proper. *See Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006). In determining whether a party has carried that burden, a court need not accept all of the complaint's allegations as true. *See Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Instead, in deciding whether to certify a class, the Court "should make whatever factual and legal inquiries [that] are necessary under Rule 23." *Id.* at 676; *see also General Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (courts may "probe behind the pleadings before coming to rest on the certification question").

## ANALYSIS

In the December 9, 2009 order, the Court concluded that Plaintiffs fulfilled the numerosity, commonality, and typicality requirements under Rule 23(a)(1)-(3). Plaintiffs' new motion for class certification does not change the Court's analysis as to these three requirements. In addition, Plaintiffs' new proposal eliminates the previous conflict of interest concerns under the adequacy requirement pursuant to Rule 23(a)(4).[1] Thus, the Court turns to the superiority and predominance requirements under Rule 23(b)(3).

Under Rule 23(b)(3), the Court must determine if (1) the questions of law or fact common to the class members predominate over questions affecting only the individual class members, and (2) a class action is superior to other available methods of adjudicating plaintiffs' claims. *See Amchem Prods.,* 521 U.S. at 615; *Andrews*, 545 F.3d at 577. Rule 23(b)(3) includes a non-exhaustive list of factors for courts to consider regarding the predominance and superiority criteria:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Amchem Prods, Inc.,* 521 U.S. at 615-16; *see also Szabo,* 249 F.3d at 676 ("Questions such as these require the exercise of judgment and the application of sound discretion").

**I.     Predominance**

Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. Although the predominance requirement is similar to Rule 23(a)'s typicality and commonality requirements – which Plaintiffs have fulfilled – it is more demanding. *See id.* at 623-24; *Puffer v. Allstate Ins. Co.,* 255 F.R.D. 450, 471 (N.D. Ill. 2009). To clarify, if a

---

[1] The Court rejects Defendants' argument that Plaintiffs' counsel are not sufficiently competent to manage this class action as baseless. In the context of counsels' conduct in connection with the May 11, 2010 settlement conference, Defendants' motion for attorney's fees is in front of Magistrate Judge Valdez. (R. 82-1.)

putative class challenges a uniform policy, the policy's validity tends to be the predominant issue in the litigation. *See Falcon,* 457 U.S. at 159 n. 15; *CE Design Ltd. v. Cy's Crabhouse North, Inc.,* 259 F.R.D. 135, 142 (N.D. Ill. 2009); *see also Cicilline v. Jewel Food Stores, Inc.,* 542 F.Supp.2d 831, 838 (N.D. Ill. 2008) ("Class certification is usually considered a superior method of adjudicating claims involving standardized conduct, even if there are individual issues that exist among class members").

Although Plaintiffs are challenging the Sheriff's uniform shackling policy, Defendants nevertheless argue that there is a need for individualized proof based on the duration of each plaintiff's restraint, the different ways plaintiffs were restrained, and the time period of the restraint. First, "the need for individual proof alone does not necessarily preclude class certification." *Pella Corp. v. Saltzman,* ___ F.3d ___, 2010 WL 1994653, at *3 (7th Cir. May 20, 2010) (per curiam). Second, Defendants' arguments go to damages and causation issues and not the underlying question of liability, namely, whether the Sheriff's shackling policy is unconstitutional. If – later in the proceedings – the Court determines that this liability question involves individualized determinations, Defendants may move to de-certify the class. At this stage of the proceedings, however, Plaintiffs have satisfied the requirement that Plaintiffs and the putative class members share common questions of law making class-wide adjudication efficient compared to repetitive individual litigation on the same liability question. *See Lemon v. International Union of Operating Eng'rs,* 216 F.3d 577, 581 (7th Cir. 2000).

## II.    Superiority

When considering whether a class action would be superior to other forms of adjudication, a central question is that of manageability. *See Williams v. Chartwell Fin. Servs.*, *Ltd.,* 204 F.3d 748, 760 (7th Cir. 2000). "[T]his consideration encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Here, the obvious manageability problem is the question of the class member's individual damages. As the Seventh Circuit teaches, Rule 23 allows courts to devise solutions to individual damages issues, including appointing a magistrate judge to preside over the damages proceedings, creating subclasses, or decertifying the class after the Court resolves liability issues. *See Arreola,* 546 F.3d at 801; *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004). Also, there is a possibility that the parties may negotiate a settlement as to the individual plaintiff's damages. *See Carnegie,* 376 F.3d at 661. Accordingly, the Court's initial manageability concerns pertaining to the 50 subsequent lawsuits are no longer at issue, especially in light of Plaintiffs' proposal that only a handful of damages proceedings will be necessary. *See Cicilline,* 542 F.Supp.2d at 838.

Meanwhile, Defendants' argument that the class action is not superior because the potential damages are not nominal is without merit because Rule 23(b)(3) does not exclude cases in which individual damages may run high. *See Amchem Prods.,* 521 U.S. at 617. Indeed, if "a few class members' injuries prove to be substantial, they may opt out and litigate independently." *Murray v. GMAC Mortgage Corp.,* 434 F.3d 948, 953 (7th Cir. 2006). Thus, the fact that Plaintiffs' damages may be more than nominal, alone, does not defeat Plaintiffs' class certification motion.

Finally, Defendants take umbrage with the fact that after the Court denied Plaintiffs' class certification motion on December 9, 2009, Plaintiffs' counsel filed additional lawsuits challenging the Sheriff's shackling policy on behalf of other plaintiffs. Counsels' filing of these additional lawsuits was based on statute of limitations concerns. *See Vitiritti v. Dart,* No. 09 C 7792, 2010 WL 1418578, at *1 (N.D. Ill. Apr. 6, 2010) (statute of limitations tolls class action lawsuit from filing date through date class certification denied). Therefore, Defendants' argument based on these additional lawsuits is unavailing, especially because these plaintiffs are now class members in the present lawsuit.