IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Catherine Zaborowski and Simone Jackson, individually and on behalf of a class, Nicole Blair, Lisa Brown, Danielle Bryant, Isabel Carmona, Mariane Cruz, Jennifer Farrar, Cora Fletcher, Denae Johnson, Deborah Lee, Felicia Ligon, Angela Oss, Sheena Richardson, Bennetta Sidney, Monique Starnes, and Latania Walton, <br><br> *Plaintiffs,* <br><br> -vs- <br><br> Sheriff of Cook County and Cook County, Illinois, <br><br> *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 08 CV 6946 <br><br> *(Judge St. Eve)* |

## SECOND AMENDED COMPLAINT

Pursuant to leave of Court, plaintiffs file this second amended complaint and, by counsel, allege as follows:

1. This is a civil action arising under 42 U.S.C. §1983. The jurisdiction of this Court is conferred by 28 U.S. C. §1343 and 28 U.S.C. §1367.

2. Plaintiffs Catherine Zaborowski, Simone Jackson, Nicole Blair, Lisa Brown, Danielle Bryant, Isabel Carmona, Mariane Cruz, Jennifer Farrar, Cora Fletcher, Denae Johnson, Deborah Lee, Felicia Ligon, Angela Oss, Sheena Richardson, Bennetta Sidney, Monique Starnes, and

Latania Walton are residents of the Northern District of Illinois. As set out below with greater specificity, each plaintiff was in the custody of the Sheriff of Cook County immediately before and immediately after she gave birth at Stroger Hospital.

3.    Defendants are Thomas J. Dart, the Sheriff of Cook County, and Cook County, Illinois. The Sheriff is sued in his individual and official capacity, as set out below with greater specificity. Plaintiffs join the County pursuant to *Carver v. Sheriff of LaSalle County*, 324 F. 3d 947 (7th Cir. 2003).

4.    Defendant Dart became the Sheriff of Cook County in 2006 and oversees nearly 10,000 detainees and 3,000 correctional officers at the Cook County Jail.

5.    Dart has at all times been personally involved in the formulation and implementation of policies at the Cook County Jail.

    a. Upon taking office as Sheriff, Dart instituted changes at the Cook County Jail, installing new technologies, including introducing body-scanning machines to prevent contraband from getting inside, while also raising standards for employment.

b. Shortly after taking office in December of 2006, Dart began to conduct weekly "accountability meetings," during which all high ranking Jail staffers are required to give detailed reports on activities in their respective divisions of the Jail.

c. Under the direction of defendant Dart, a "Weapons Free Committee" was formed at the Jail to collect, inventory, and analyze all inmate-made shanks and weapons with the goal of reducing inmate and staff injuries.

d. In 2007, defendant Dart formed a "blue ribbon" committee of former U.S. Attorneys and other legal and law enforcement experts to evaluate the Sheriff's internal affairs operations.

e. Dart selected and hired a consultant to train correctional officers on how to better recognize and supervise inmates with mental health issues.

f. Before Dart became Sheriff, detainees were not permitted to have contact visits with their minor children. Dart changed this policy in May of 2008, when he authorized contact visits between female detainees and their children.

g. Dart has been personally involved in the operation of the 13,000 square foot garden located on the grounds of the Cook County Jail that is used to train detainees.

6. At the same time that he adopted and implemented the above described progressive policies, defendant Dart permitted the continuation of an official policy (hereinafter "shackling policy") requiring correctional officers to shackle pregnant woman, who are in the custody of the Sheriff of Cook County, before, during, and immediately after labor and delivery.

7. Defendant Dart's shackling policy implements a barbaric practice that needlessly inflicts excruciating pain and humiliation:

a. Shackling a pregnant woman during and immediately after the birthing process poses an obvious and substantial risk of harm to the woman's health and safety.

b. A pregnant woman who is shackled during the birthing process will often soil her bedsheets, causing actual discomfort and humiliation and subjecting the woman to a serious risk of infection.

c. A woman who is shackled during labor is unable to move to allay the pains of labor, and will often incur bruising from the shackles and experience a loss of dignity.

-4-

8.    Defendant Dart has enforced his shackling policy in willful and wanton disregard of the laws of the State of Illinois: At all times relevant, there has been in force and effect an Illinois statute, compiled as 55 ILCS 5/3-15003.6, that provides as follows:

> **Pregnant female prisoners**. Notwithstanding any other statue, directive, or administrative regulation, when a pregnant female prisoner is brought to a hospital form a County Department of Corrections facility for the purpose of delivering her baby, no handcuffs, shackles, or restraints of any kind may be used during her transport to a medical facility for the purpose of delivering her baby. Under no circumstances may leg irons or shackles or waist shackles be used on any pregnant female prisoner who is in labor. Upon the pregnant prisoner's entry to the hospital delivery room, a county correctional officer must be posted immediately outside the delivery room. The Sheriff must provide for adequate personnel to monitor the pregnant female prisoner during her transport to and from the hospital and during her stay at the hospital.

9.    Defendant Dart has enforced his shackling policy in deliberate indifference to the laws of the United States:

> a.    Defendant Dart's shackling policy violates the *Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment* (the "Torture Convention"), G.A. Res. 46, 39 U.N. GAOR Supp. (No. 51), U.N. Doc. A/39/51 (1984). The United States ratified this treaty in 1994.

b. Defendant Dart's shackling policy also violates the *International Covenant on Civil and Political Rights* (the "ICCPR"), GA res. 2200A (XXI), 21 U.N. GAOR Supp. (No. 16) at art. 7, U.N. Doc. A/6316 (1966). The United States ratified this treaty in 1992.

10. Defendant Dart has enforced his shackling policy in deliberate indifference to clearly established federal law:

a. In 1980, the United States Court of Appeals for the Seventh Circuit held that it was settled law that pretrial detainees may not be shackled without a good penological or medical reason.

b. At some time after December 1, 2007, defendant Dart learned that the widespread practice at the Cook County Jail was that pregnant female detainees would be

i. Shackled while being transported to a hospital for labor and delivery, and/or

ii. Shackled during labor and delivery; and/or

iii. Shackled during recovery after labor,

11. After learning of the widespread shackling practices referred to above, defendant Dark knew that unlawful and unconstitutional policies

were being applied to pregnant female detainees in his custody before, during, and after childbirth.

12. Notwithstanding his actual knowledge that unlawful and unconstitutional policies were being applied to pregnant female detainees in his custody before, during, and after childbirth, defendant Dart sought to conceal the unlawful policy by making false public statements that shackling was necessary because many female detainees have escaped from custody during childbirth. Dart also made the false public statement that shackling a detainee before, during, and after childbirth conforms to Illinois law.

13. Defendant Dart delayed for more than one year in taking remedial action after he learned that unlawful and unconstitutional shackling policies were being applied to pregnant female detainees in his custody before, during, and after childbirth. As set out below with greater specificity, plaintiffs Blair, Brown, Bryant, Carmona, Cruz, Farrar, Fletcher, Johnson, Lee, Ligon, Oss, Richardson, Sidney, Starnes, and Walton were each subjected to the shackling policy because of defendant Dart's failure to intervene and take action to correct the unlawful policy after he acquired personal knowledge that, notwithstanding clearly settled

federal law and the unambiguous state statute, female detainees were being shackled before, during, and after childbirth.

## The Class Claim and the Class Representatives

14.   Plaintiff Zaborowski entered the Cook County Jail on June 3, 2008; plaintiff Jackson entered the Jail on November 23, 2007.

15.   Zaborowski and Jackson were each pregnant when she entered the jail.

16.   Pursuant to the policies of defendant Sheriff, Zaborowski and Jackson were each transferred from the Jail to the Sheriff's "MOM's" program, an off-site, residential treatment program run by the Haymarket Center.

17.   Plaintiff Zaborowski went into labor on August 29, 2008 and was taken by a counselor from the Haymarket Center to Stroger Hospital. Zaborowski was not handcuffed or otherwise restrained while she was being taken to the hospital.

18.   Following her arrival at Stroger Hospital, and in accordance with the policies of defendants, deputy sheriffs shackled plaintiff Zaborowski hand and foot to a hospital bed.

19.   Plaintiff Zaborowski remained shackled hand and foot to the hospital bed for about eleven hours while she was in labor.  An armed deputy sheriff remained in the hospital room while plaintiff was in labor.

20.   Immediately before the birth, the attending physician requested the deputy sheriff to unshackle plaintiff Zaborowski's foot.  The deputy complied with this request and Zaborowski was shackled to the bed by one arm when she delivered her child at about 8:15 a.m. on August 30, 2008.

21.   In accordance with the policies of defendants, the deputy sheriff re-shackled plaintiff Zaborowski's foot about an hour after the birth.

22.   Plaintiff Zaborowski remained at Stroger Hospital until the evening of the next day, September 1, 2008.  During this period, and as required by defendants' policies, Zaborowski was shackled hand and foot to the hospital bed and was not permitted to use the toilet or to get up from the bed to walk

23.   Plaintiff Jackson went into labor on May 3, 2008 and was taken by her counselor from the Haymarket Center to Stroger Hospital. Jackson was not handcuffed or otherwise restrained while she was being taken to the hospital.

24.   Following her arrival at Stroger Hospital, and in accordance with the policies of defendants, deputy sheriffs shackled plaintiff Jackson hand and foot to a hospital bed.

25.   Plaintiff Jackson remained shackled hand and foot to the hospital bed while she was in labor and during birth.  An armed deputy sheriff remained in the hospital room while plaintiff was in labor and was present when plaintiff delivered her child while shackled.

26.   Plaintiff Jackson remained at Stroger Hospital for about four days.  During this period, and as required by defendants' policies, Jackson was shackled hand and foot to the hospital bed and was not permitted to use the toilet or to get up from the bed to walk.

27.   Jackson and Zaborowski were each deprived of rights secured by the Fourth, Eighth, and Fourteenth Amendment to the Constitution of the United States by defendant Dart's above described shackling policy.

28.   Jackson and Zaborowski were each damaged as the direct and proximate result of defendant Dart's failure and or refusal to implement the above referred Illinois statute.

29.   As a direct and proximate result of defendant Dart's shackling policy,   and by defendant Dart's failure and or refusal to implement the above referred Illinois statute, plaintiffs and all other persons subjected to

the above referred policy were unreasonably restrained, subjected to punishment, incurred great emotional and physical pain and suffering.

30. Plaintiffs Jackson and Zaborowski bring this action individually and for all women in the custody of defendant Sheriff who, in the two year period preceding the filing of this lawsuit, were shackled during labor and after delivery. The class claim, which is asserted against defendant Dart in his official capacity only, satisfies each of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and has been allowed to proceed as a class action under Rule 23(b)(3).

## THE INDIVIDUAL LIABILITY CLAIMS

31. Plaintiffs Nicole Blair, Lisa Brown, Danielle Bryant, Isabel Carmona, Mariane Cruz, Jennifer Farrar, Cora Fletcher, Denae Johnson, Deborah Lee, Felicia Ligon, Angela Oss, Sheena Richardson, Bennetta Sidney, Monique Starnes, and Latania Walton are all members of the class represented by Jackson and Zaborowski. In addition to the claim asserted by the class against defendant Dart in his official capacity, plaintiffs Blair, Brown, Bryant, Carmona, Cruz, Farrar, Fletcher, Johnson, Lee, Ligon, Oss, Richardson, Sidney, Starnes, and Walton seek to impose liability on defendant Dart in his individual capacity for his deliberate indifference in delaying for more than one year in taking remedial action after he learned

that unlawful and unconstitutional shackling policies were being applied to pregnant female detainees in his custody before, during, and after childbirth. Dart's failure to intervene and stop the unlawful practice was a proximate cause of the unlawful shackling of these plaintiffs.

### Nicole Blair

32.    Plaintiff Nicole Blair was admitted to the Cook County Jail as a pre-trial detainee on or about January 30, 2008.

33.    Blair was pregnant when she was admitted to the jail.

34.    Blair was transported to Stroger Hospital from the Cook County Jail on May 19, 2008 at the direction of a physician at the jail.

35.    As required by defendant Dart's "shackling policy," a Deputy Sheriff shackled Blair by hand and foot while she was being transported to the hospital.

36.    Blair remained at Stroger Hospital until May 21, 2008.

37.    As required by defendant Dart's "shackling policy," a Deputy Sheriff required Blair to remain shackled to a hospital bed until shortly before she delivered her child.

38.    As required by defendant Dart's "shackling policy," a Deputy Sheriff re-shackled Blair following the birth of her child.

39.   As required by defendant Dart's "shackling policy," and notwithstanding requests of physicians at Stroger Hospital, a Deputy Sheriff required Blair to remain shackled at all times until she left Stroger Hospital.

40.   Following her discharge from Stroger Hospital, and as required by Dart's "shackling policy," Blair was shackled while a Deputy Sheriff returned plaintiff to the Cook County Jail.

## Lisa Brown

41.   Plaintiff Lisa Brown was admitted to the Cook County Jail as a pre-trial detainee on or about May 12, 2008.

42.   Brown was pregnant when she was admitted to the jail.

43.   Brown was transported to Stroger Hospital from the Cook County Jail on or about May 27, 2008 at the direction of a physician at the jail.

44.   As required by defendant Dart's "shackling policy," a Deputy Sheriff shackled Brown by hand and foot while she was being transported to the hospital.

45.   Brown remained at Stroger Hospital until May 31, 2009.

46. As permitted by defendant Dart's "shackling policy," a Deputy Sheriff required Brown to remain shackled to a hospital bed while she delivered her child.

47. As required by defendant Dart's "shackling policy," a Deputy Sheriff required Brown to remain shackled until she left Stroger Hospital on May 31, 2008.

48. Following her discharge from Stroger Hospital, and as required by Dart's "shackling policy," Brown was shackled while a Deputy Sheriff returned plaintiff to the Cook County Jail.

## Danielle Bryant

49. Plaintiff Danielle Bryant was admitted to the Cook County Jail as a pre-trial detainee on or about August 9, 2008.

50. Bryant was pregnant when she was admitted to the jail.

51. Pursuant to the policies and/or practices of defendant Sheriff, Bryant was transferred to the Sheriff's "MOM's" program sometime before September 22, 2008.

52. Bryant went into labor on September 22, 2008 and was taken by a counselor from the Haymarket Center to Stroger Hospital. Bryant was not handcuffed or otherwise restrained while she was taken to the hospital.

-14-

53. At the hospital, and as required by defendant Dart's shackling policy, a deputy sheriff shackled Bryant's foot to the hospital bed.

54. Bryant's foot remained shackled to the hospital bed for approximately twelve hours while she was in labor. An armed deputy sheriff remained in the hospital room while Bryant was in labor.

55. Immediately before the birth of Bryant's child at about 8:00 a.m. on September 23, 2008, a deputy sheriff unshackled Bryant's leg. The deputy sheriff re-shackled Bryant to the bed shortly after the birth of her child.

56. After the delivery of her child, Bryant was removed from the labor and delivery room and assigned to a room within the hospital. There, as required by defendant Dart's policies, Bryant was shackled by hand and foot to the bed.

57. Bryant remained at the hospital until the evening of September 25, 2008. With the exception of brief periods when she was feeding her baby, Bryant was shackled by hand and foot to the hospital bed.

## Isabel Carmona

58. Plaintiff Isabel Carmona was admitted to the Cook County Jail as a pre-trial detainee on or about March 8, 2008.

59. Carmona was pregnant when she was admitted to the jail.

60.     Carmona was transported to Stroger Hospital from the Cook County Jail on April 9, 2008 at the direction of a physician at the jail.

61.     As required by defendant Dart's "shackling policy," a Deputy Sheriff shackled Carmona by hand and foot while she was being transported to the hospital.

62.     Carmona remained at Stroger Hospital until April 11, 2008.

63.     As required by defendant Dart's "shackling policy," a Deputy Sheriff required Carmona to remain shackled to a hospital bed until shortly before she delivered her child.

64.     As required by defendant Dart's "shackling policy," a Deputy Sheriff re-shackled Carmona following the birth of her child.

65.     As required by defendant Dart's "shackling policy," a Deputy Sheriff required Carmona to remain shackled until she left Stroger Hospital.

66.     Following her discharge from Stroger Hospital, and as required by Dart's "shackling policy," Carmona was shackled while a Deputy Sheriff returned plaintiff to the Cook County Jail.

## Mariane Cruz

67.     Plaintiff Mariane Cruz was admitted to the Cook County Jail as a pre-trial detainee on or about April 8, 2009.

-16-

68.  Cruz was pregnant when she was admitted to the jail.

69.  Cruz began to exhibit symptoms of preterm labor on or about April 10, 2009; at the direction of a physician at the jail, Cruz was transported to Stroger Hospital at about 1:00 a.m. on or about April 11, 2009.

70.  As required by defendant Dart's "shackling policy," a Deputy Sheriff shackled Cruz by hand and foot while she was being transported to the hospital.

71.  Cruz remained at Stroger Hospital until on or about April 13, 2009, where she received treatment to stop her labor.

72.  As required by defendant Dart's "shackling policy," and notwithstanding requests of physicians at Stroger Hospital, a Deputy Sheriff required Cruz to remain shackled to a hospital bed during the entirety of her stay at the hospital.

73.  Following her discharge from Stroger Hospital, and as required by Dart's "shackling policy," Cruz was shackled while a Deputy Sheriff returned plaintiff to the Cook County Jail.

## Jennifer Farrar

74.  Plaintiff Jennifer Farrar was processed into the Cook County Jail as a pretrial detainee on November 24, 2008.

-17-

75.   At the time she was processed into the jail, Farrar was enrolling in and receiving daily methadone from a treatment program.

76.   While being processed into the Jail on November 24, 2008, Farrar informed intake personnel that she was pregnant and that she was receiving methadone on a daily basis from a methadone program.

77.   As a result of the Sheriff's policies at issue in *Parish v. Sheriff*, 07 CV 4369, Farrar did not receive methadone until November 29, 2009 and suffered withdrawal symptoms which included vomiting, sweating, cramps, and headaches. (Farrar is a member of the plaintiff class in the *Parish* litigation and does not seek to litigate in this action the claim that is at issue in *Parish*.

78.   On January 7, 2009, jail personnel transported Farrar to the Rolling Meadows Courthouse.

79.   In the course of the aforesaid court appearance, Farrar went into labor and was transported by ambulance to a hospital. As required by defendant Dart's policy, Farrar's hand and foot were shackled while she was being transported to the hospital.

80.   Farrar was admitted to the hospital on January 7, 2009 and assigned to a labor and delivery room.

81. While in the labor and delivery room, as required by defendant Dart's "shackling policy," a Deputy Sheriff shackled Farrar by hand and foot to the hospital bed.

82. Farrar remained shackled in the labor and delivery room. Farrar 's leg was unshackled shortly before delivery; plaintiff's hand, however, remained shackled to the bed during the delivery.

83. As required by defendant Dart's "shackling policy," Farrar remained shackled during recovery following childbirth and at all times thereafter while she remained at the hospital.

## Cora Fletcher

84. Plaintiff Cora Fletcher was admitted to the Cook County Jail as a pre-trial detainee on or about May 7, 2008.

85. Fletcher was pregnant when she was admitted to the jail.

86. Fletcher was transported to Stroger Hospital from the Cook County Jail on May 16, 2008 at the direction of a physician at the jail.

87. As required by defendant Dart's "shackling policy," a Deputy Sheriff shackled Fletcher by hand and foot while she was being transported to the hospital.

88. Fletcher remained at Stroger Hospital from May 16, 2008 until May 20, 2008.

89.    As required by defendant Dart's "shackling policy," a Deputy Sheriff required Fletcher to remain shackled to a hospital bed while she was at Stroger Hospital on May 16, 2008.

90.    As required by defendant Dart's "shackling policy," a Deputy Sheriff required Fletcher to remain shackled to a hospital bed while she was at Stroger Hospital on May 17, 2008.

91.    As required by defendant Dart's "shackling policy," a Deputy Sheriff required Fletcher to remain shackled to a hospital bed for all save 45 minutes on May 18, 2008: the Deputy permitted Fletcher to leave the hospital bed and use a washroom for 15 minutes and unshackled plaintiff for 30 minutes while she received a gynecological examination. Fletcher remained shackled to a hospital bed for the remainder of the day on May 18, 2008.

92.    As required by defendant Dart's "shackling policy," a Deputy Sheriff required Fletcher to remain shackled to a hospital bed for all save 10 minutes on May 19, 2008.

93.    As required by defendant Dart's "shackling policy," a Deputy Sheriff required Fletcher to remain shackled to a hospital bed until she was discharged from the hospital on May 20, 2008.

94.    Following her discharge from Stroger Hospital, and as required by Dart's "shackling policy," Fletcher was shackled while a Deputy Sheriff returned plaintiff to the Cook County Jail.

### Denae Johnson

95.    Plaintiff Denae Johnson was admitted to the Cook County Jail on or about June 9, 2008.

96.    Johnson was pregnant when she was admitted to the jail and was assigned to the Sheriff's "Mom's" program, a residential treatment program conducted outside of the Cook County Jail.

97.    On June 10, 2008, Johnson was taken to Stroger Hospital for a medical appointment by a counselor from the Mom's program. Johnson was not handcuffed or otherwise restrained while being transported to the hospital.

98.    The counselor remained with Johnson until plaintiff gave birth at about 9:00 a.m. on June 10, 2008.

99.    Following the birth of her child, and as permitted or required by defendant Dart's "shackling policy," a Deputy Sheriff required Johnson to remain shackled until she left Stroger Hospital on or about June 13, 2008.

## Deborah Lee

100. Plaintiff Deborah Lee was pregnant when she was admitted to the jail.

101. Lee went into labor on June 1, 2009 at approximately 4:00 p.m in the afternoon and was transported in a squad car to John Stroger Hospital. Lee's legs were shackled and she was in handcuffs while she was being transported to the hospital.

102. Following her admission to the hospital, Lee was placed into a labor and delivery room.

103. While in the labor and delivery room, as required by defendant Dart's "shackling policy," a Deputy Sheriff shackled Lee by hand and foot to the hospital bed.

104. As required by defendant Dart's "shackling policy," Lee remained shackled during labor.

105. At approximately 4:00 a.m. on June 2, 2009, Lee delivered a baby. As required by defendant Dart's "shackling policy," Lee delivered her child while shackled.

106. As required by defendant Dart's "shackling policy," Lee remained shackled during the next several days during her post-delivery recovery at Stroger Hospital.

## Felicia Ligon

107.  Plaintiff Felicia Ligon was admitted to the Cook County Jail as a pre-trial detainee on or about November 14, 2008.

108.  Ligon was pregnant when she was admitted to the jail.

109.  Ligon was transported to Stroger Hospital from the Cook County Jail on or about January 4, 2009 at the direction of a physician at the jail.

110.  As required by defendant Dart's "shackling policy," a Deputy Sheriff shackled Ligon by hand and foot while she was being transported to the hospital.

111.  Ligon remained at Stroger Hospital until January 9, 2009.

112.  As required by defendant Dart's "shackling policy," a Deputy Sheriff required Ligon to remain shackled to a hospital bed until shortly before she delivered her child.

113.  As required by defendant Dart's "shackling policy," a Deputy Sheriff re-shackled Ligon about ten minutes after the birth (by Caesareian section), of her child.

114.  As required by defendant Dart's "shackling policy," a Deputy Sheriff required Ligon to remain shackled other than for a brief periods until she left Stroger Hospital.

-23-

115. Following her discharge from Stroger Hospital, and as required by Dart's "shackling policy," Ligon was shackled while a Deputy Sheriff returned plaintiff to the Cook County Jail.

## Angela Oss

116. Plaintiff Angela Oss was admitted to the Cook County Jail as a pre-trial detainee on or about August 26, 2008.

117. Oss was pregnant when she was admitted to the jail.

118. Oss went into labor in the evening of August 26, 2008 and was transported to St. Anthony Hospital where she gave birth shortly before midnight.

119. Oss remained at the hospital for two days. During that time, as required by defendant Dart's "shackling policy," a Deputy Sheriff required Oss to be shackled to her hospital bed.

120. Following her discharge from the hospital, and as required by Dart's "shackling policy," Oss was shackled while a Deputy Sheriff returned plaintiff to the Cook County Jail.

## Sheena Richardson

121. Plaintiff Sheena Richardson was admitted to the Cook County Jail as a pre-trial detainee on or about September 10, 2008.

122. Richardson was pregnant when she was admitted to the jail.

123. Richardson was transported to Stroger Hospital from the Cook County Jail on September 15, 2008 at the direction of a physician at the jail.

124. As required by defendant Dart's "shackling policy," a Deputy Sheriff shackled Richardson by hand and foot while she was being transported to the hospital.

125. Richardson remained at Stroger Hospital until September 19, 2008.

126. As required by defendant Dart's "shackling policy," a Deputy Sheriff required Richardson to remain shackled to a hospital bed until shortly before she delivered her child.

127. As required by defendant Dart's "shackling policy," a Deputy Sheriff re-shackled Richardson following the birth of her child.

128. As required by defendant Dart's "shackling policy," and notwithstanding requests of physicians at Stroger Hospital, a Deputy Sheriff required Richardson to remain shackled other than for a brief period on September 19, 2008 until she left Stroger Hospital.

129. Following her discharge from Stroger Hospital, and as required by Dart's "shackling policy," Richardson was shackled while a Deputy Sheriff returned plaintiff to the Cook County Jail.

## Bennetta Sidney

130. Plaintiff Bennetta Sidney was admitted to the Cook County Jail as a pre-trial detainee on or about April 4, 2009.

131. Sidney was pregnant when she was admitted to the jail.

132. Sidney went into labor on July 27, 2009 and was transported from the jail to Stroger Hospital at about 7:00 p.m. on July 27, 2009.

133. As required by defendant Dart's shackling policy, a Deputy Sheriff shackled plaintiff by hand and foot, and placed a chain around plaintiff's waist, before Sidney was taken to Stroger hospital.

134. Following her admission to the hospital, Sidney was placed into a labor and delivery room.

135. While in the labor and delivery room, as required by defendant Dart's "shackling policy," a Deputy Sheriff shackled Sidney by hand and foot to the hospital bed.

136. Sidney gave birth to her child at approximately 11:30 p.m. that night. Sidney remained shackled until about 30 minutes before the birth of her child.

137. As required by defendant Dart's "shackling policy," Sidney remained shackled during post-delivery recovery until her release from the hospital on July 30, 2009.

### Monique Starnes

138. Plaintiff Monique Starnes was admitted to the Cook County Jail in May of 2007.

139. Starnes was pregnant when she was admitted to the jail and in June of 2007 was assigned to the Sheriff's "Mom's program", a residential treatment program conducted outside of the Cook County Jail.

140. On July 14, 2007, a counselor from the Mom's program took Starnes to Stroger Hospital for a medical examination relating to Starnes's pregnancy. Starnes was not handcuffed nor otherwise restrained while being transported to the hospital.

141. A physician at the hospital examined Starnes on July 14, 2007 and directed that she be admitted to the hospital for the purpose of delivering her baby.

142. While Starnes was in labor on July 14, 2007, a Deputy Sheriff, as permitted or required by defendant Dart's "shackling policy," shackled Starnes to the hospital bed.

143. Starnes was in labor for about two days before delivering her child. With the exception of a brief period, Starnes was shackled to the hospital bed during labor.

144. Following the birth of her child at about 9:30 p.m. on July 16, 2008, and pursuant to defendant Dart's "shackling policy," a Deputy Sheriff required Starnes to be shackled to her hospital bed.

## Latania Walton

145. Plaintiff Latania Walton was admitted to the Cook County Jail as a pre-trial detainee on or about August 9, 2008.

146. Walton was pregnant when she was admitted to the jail.

147. Walton was transported to Stroger Hospital from the Cook County Jail on August 26, 2008 at the direction of a physician at the jail.

148. As required by defendant Dart's "shackling policy," a Deputy Sheriff shackled Walton by hand and foot while she was being transported to the hospital.

149. Walton remained at Stroger Hospital until August 29, 2008.

150.    As required by defendant Dart's "shackling policy," a Deputy Sheriff required Walton to remain shackled to a hospital bed until shortly before she delivered her child.

151.    As required by defendant Dart's "shackling policy," a Deputy Sheriff re-shackled Walton following the birth of her child.

152.    As required by defendant Dart's "shackling policy," a Deputy Sheriff required Walton to remain shackled other than when she was feeding her child until she left Stroger Hospital.

153.    Following her discharge from Stroger Hospital, and as required by Dart's "shackling policy," Walton was shackled while a Deputy Sheriff returned plaintiff to the Cook County Jail.

154.  Plaintiffs hereby demand trial by jury on all claims

Wherefore plaintiffs request that judgment be entered in their favor and in favor of the proposed class, that plaintiffs and each class member receive compensatory damages in an amount in excess of one hundred thousand dollars, that plaintiffs Blair, Brown, Bryant, Carmona, Cruz, Farrar, Fletcher, Johnson, Lee, Ligon, Oss, Richardson, Sidney, Starnes, and Walton be awarded appropriate compensatory and punitive damages against defendant Dart in his individual capacity, and that the Court grant whatsoever other relief as may be appropriate.

/s/  Kenneth N. Flaxman

Thomas G. Morrissey, Ltd.
10249 S. Western Ave.
Chicago, Il. 60643
(773)-233-7900

Kenneth N. Flaxman
ARDC 0830399
200 South Michigan Ave
Suite 1240
Chicago, Il. 60604-2430
(312) 427-3200

*Attorneys for Plaintiffs*

-30-

# CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of September, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Michael Gallagher, ASA, 500 Daley Center, Chicago, IL 60602, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: none.


/s/ Kenneth N. Flaxman
_____
Kenneth N. Flaxman
ARDC Number 08830399
200 S Michigan Ave, Ste 1240
Chicago, IL 60604-2430
(312) 427-3200 (phone)
(312) 427-3930 (fax)
knf@kenlaw.com (email)