**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Catherine Zaborowski and Simone Jackson, individually and on behalf of a class, et. al. | ) ) ) | 08 CV 6946 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Honorable Judge St. Eve |
| Thomas J. Dart, Sheriff of Cook County and Cook County, Illinois | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO RECONSIDER THE COURT'S ORDER
DENYING SUMMARY JUDGMENT AS TO PLAINTIFFS' CLASS
CLAIMS AGAINST SHERIFF DART AND COOK COUNTY**

NOW COME Defendants, Thomas Dart, Sheriff of Cook County and Cook County, by and through their attorney, Anita Alvarez, State's Attorney of Cook County, and through her Assistant State's Attorneys, Michael L. Gallagher and Julia S. Bruce, respectfully request that this Court reconsider its' order denying summary judgment as to Plaintiffs' class claims against Sheriff Dart in his official capacity.

**ARGUMENT**

**I. SUMMARY JUDGEMENT SHOULD BE GRANTED IN DEFENDANTS' FAVOR ON PLAINTIFFS' STATE LAW CLAIM.**

Defendants request that this Court reconsider its order denying summary judgment in favor of Defendants on Plaintiffs' state law claim. Plaintiffs have failed to set forth any evidence in the record that Defendants acted with a "conscious disregard for the safety or health" of the pregnant detainees or their unborn children. *See* 745 ILCS 10/2-202.[1] Instead, the record is

---

[1] A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act constitutes willful and wanton conduct. The Tort Immunity Act defines "willful and wanton conduct" as "a course

undisputed regarding the following: (1) the Illinois statute does not address the use of restraints on pregnant detainees during pre-labor or post-delivery and therefore CCJ's policy regarding the use of restraints during these time periods is irrelevant to Plaintiffs' state law claim; (2) class Plaintiffs and their unborn children did not suffer any injuries as a result of CCJ's restraint policy; (3) class Plaintiffs did not file any CCJ detainee grievances regarding the restraint policy; and (4) neither Cook County Stroger Hospital ("Stroger") nor Cermak Health Services ("Cermak") personnel informed CCJ policymakers that the policy was being improperly administered or resulted in a risk to the safety or health of pregnant detainees. Therefore, Defendants respectfully request that summary judgment be granted in their favor as to Plaintiffs' state law claim.

> **Defendants should not be held liable pursuant to the Tort Immunity Act because a there is no evidence that CCJ policymakers "consciously disregarded" the safety and health of pregnant detainees in labor or delivery.**

In evaluating Plaintiffs' state law claim, this Court applied the framework outlined in *First Springfield Bank & Trust v. Galman,* 188 Ill.2d 252, 256 (Ill. 1999). Specifically, the Court stated that in order for a plaintiff to recover damages based upon a defendant violating a statute, "a plaintiff must show that (1) she belongs to the class of persons that the statute was designed to protect; (2) her injury is of the type that the statute was designed to prevent; and (3) the violation proximately caused her injury." *See Memorandum Opinion and Order,* December 20, 2011 (Docket Entry No. 279, p.16). The Court recognized that "there is an extra layer of analysis required under the Illinois Local Government and Governmental Employees Tort Immunity Act." *Id.* at p.18. Specifically, Section 2-202 of the Tort Immunity Act states that a government employee cannot be held liable for any act or omission unless his conduct constitutes willful and

---

of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *See* 745 ILCS 10/1-210.

wanton conduct, or in other words, shows "conscious disregard for the safety of others or their property." *See Id.* (citing 745 ILCS 10/2-202; 10/1-210). The Court found that based on the evidence in the record a reasonable juror could find that certain policymakers "consciously disregarded the pregnant detainees' and their infants' health when delivering." *Id.* at 19. Defendants respectfully disagree where there is absolutely no evidence in the record that CCJ policymakers consciously disregarded the health of the pregnant detainees or their unborn children.

First, the Illinois statute does not address the use of restraints during pre-labor or post-delivery, and as such, it is irrelevant in analyzing Plaintiffs' state law claim whether the CCJ's policy allowed the use of restraints during pre-labor or post-delivery. Therefore, the only relevant inquiry should be whether restraints were used during labor and/or delivery and whether Defendants consciously disregarded the health of class Plaintiffs. In ruling on the parties' cross-motions for summary judgment, this Court made a finding that certain policymakers "acknowledged that pregnant detainees from both the Maternal Objective Management ("MOMs") program and the CCJ complex were shackled at some point during labor, delivery, and/or recovery following delivery. *Id.* at 18-19. Specifically, the Court noted that "certain policymakers, namely, the Superintendent of External Operations, the Executive Director of the Women's Justice Services, and the Superintendent of Administration" testified that they were aware of pregnant detainees being restrained during labor. *Id.* However, the testimony referenced in the Court' order - although Plaintiffs did their best to misconstrue it - does not support a finding that these policymakers were aware that pregnant detainees were being restrained during labor.

3

Superintendent Hickerson testified that pregnant detainees who were brought to the hospital for purposes of childbirth were restrained; however, he also testified that those restraints were removed once the pregnant detainee went into labor. *See Id.* p.7 (*citing* Hickerson Dep, at 43); *see also* Defendants' Additional Statement of Facts (Docket Entry No 236, ¶ 36)**.** Again, the statute states that "under no circumstances may leg irons or shackles or waist shackles be used on any pregnant female prisoner who is in labor." *See* (Docket Entry No. 279 p.6-7). It does not address whether restraints are allowed on a pregnant detainee who is at the hospital for purposes of childbirth, but who *is not yet in labor.* Therefore, the cited testimony of Superintendent Hickerson does not support a finding that Defendants violated the state statute.

Similarly, the Executive Director of the Women's Justice Services, Terrie McDermott testified that although she was aware of the External Operations' general policy of restraining hospitalized detainees, she specifically testified that she was *not* aware of any MOMS program participants being restrained once hospitalized. *See* (Docket Entry No. 279 p.7) (McDermott Dep. at 19-20). Even if her testimony can be construed to say she was aware that pregnant detainees were restrained after being hospitalized, again, she does not testify that she was aware they were restrained during labor or delivery. *Id.* Therefore, Director McDermott's testimony does not support a finding that Defendants violated the state statute.

The Court's ruling seems to hinge on the testimony of Superintendent Holmes who testified that it was the practice of the guards that were providing security to remove the restraints once a pregnant detainee went into "active labor." *Id.* at p. 7 (*citing* Holmes' Dep. at 96-97). However, just as it was unfair of Plaintiffs' counsel to ask Superintendent Holmes to define labor or "active labor" as a layperson without any expertise in the field of obstetrics and gynecology, similarly, it would be unfair to deny summary judgment based on the lay opinion of

one witness who has no expertise or knowledge to make a determination of when a woman begins labor. Especially in light of the fact that the written policy in place was consistent with the Illinois statue and clearly stated that "in accordance with [the Illinois statute] NO handcuffs, leg irons or waist chains shall be used on a female inmate (detainee) who is in labor." *See* (56.1(a) ¶51, 53). Additionally, all the witnesses, including Superintendent Holmes, consistently testified that the officers relied on doctors to inform them when a pregnant detainee was in labor and that the officers would remove the restraints upon being informed by medical personnel that a woman was in labor. *See* Defendants' Additional Statement of Facts (Docket Entry No. 236, ¶ 36-37). In fact, Plaintiffs' own expert, Dr. Adashi testified that it was reasonable for officers to rely on medical personnel to inform them when a pregnant detainee was in labor. *See* (56.1(a) ¶ 67).

Assuming *arguendo* that the practice was to remove the restraints only when pregnant detainees began "active labor," this still does not rise to the level of "conscious disregard for the safety of others" where there were no injuries to the class members or their unborn children, there were no detainee grievances filed regarding the restraint policy, and there is no evidence in the record that Stroger personnel or Cermak personnel ever informed CCJ policymakers that the policy was being improperly administered or created a risk to the health and safety of the pregnant detainees or their unborn children.

This Court found that "the Class Plaintiffs' injuries associated with their shackling are the type of injuries the Illinois statute is designed to prevent, including the strain on the unborn child and the mother." *See* (Docket Entry No. 279 p.17). Defendants dispute that any of the named Plaintiffs or the 100 purported class members suffered any physical injuries as a result of the CCJ's restraint policy, let alone the injuries the statute is designed to prevent, i.e. "strain on the unborn child and the mother." *Id.* In fact, Plaintiffs have failed to provide any evidence in the

5

record that the class members were injured as a result of being restrained during pre-labor or "non-active" labor, let alone set forth any evidence that they were injured as a result of being restrained during labor or delivery. Therefore, the evidence is undisputed that Plaintiffs had no injuries as contemplated by Illinois statute, and as such, their state law claim fails as a matter of law.

Furthermore, there is no evidence in the record that any of the named Plaintiffs or the class members ever filed any CCJ detainee grievances against any Cook County officers regarding the restraint policy or complaining of any injuries as a result of being restrained during non-active or active labor or delivery. (56.1(a) ¶ 100). Additionally there is no evidence that any of the named Plaintiffs or class members made any complaints to Stroger medical personnel regarding injuries they suffered as a result of being restrained during labor, and none of the Stroger medical records document any injuries. Similarly, there is no evidence that any of the named Plaintiffs complained to Cermak medical personnel of injuries due to being restrained during labor or delivery. (56.1(a) ¶ 72-73).

Dr. Stamatia Richardson testified that as the primary prenatal physician at Cermak she conducted post-delivery interviews with every CCJ detainee that has delivered a child since 2007. (56.1(a) at ¶ 72). During these interviews she asked the detainees if they had any complaints regarding the way in which they were treated by correctional or medical staff, and whether they had any physical or emotional issues or concerns as a result. *Id.* at ¶ 73. Dr. Richardson testified that not a single detainee complained that they were restrained during labor or delivery, let alone complained that they suffered any physical or emotional injuries as a result of being restrained in such a way. *Id.* Therefore, Plaintiffs have failed to provide any evidence that Stroger or Cermak personnel ever informed CCJ officers - let alone CCJ policymakers - that

6

the restraint policy was being improperly implemented or that the policy placed pregnant detainees or their unborn children at risk. As such, Defendants could not possibly have "consciously disregarded" the safety and health of the pregnant detainees and their unborn children when the record is devoid of any facts that show they were ever put on notice or knew of any such risk, and there were in fact no injuries whatsoever documented as a result thereof.

Moreover, the CCJ's policy in effect in December of 2006 and the continued expansion of that policy in 2008, 2010 and 2011 actually demonstrate that Defendants showed a real concern for the health and safety of the pregnant detainee and the unborn child. Again, in July of 2006, General Order EO-32 was put into effect, which provided in part, that "in accordance with [the Illinois statute] NO handcuffs, leg irons or waist chains shall be used on a female inmate (detainee) who is in labor, this includes while being transported to a medical facility." *Id.* at ¶ 51. Therefore - almost six months before the class claims began - the CCJ had put into effect a policy, citing the Illinois statute, barring the use of restraints on pregnant detainees in labor and delivery. Additionally, on October 14, 2008, almost two months before the original lawsuit was filed, the CCJ expanded their policy even more for MOMS program participants - which represented two-thirds of all detainees that delivered while in CCJ custody - and barred the use of restraints during any point of their pregnancy, including labor, delivery and post-delivery. *Id.* at ¶ 29. On April 5, 2010, the CCJ issued General Order 11.5.30.0 ("2010 G.O."), which expanded the restraint policy for all detainees where it states that a pregnant female detainee in labor includes a pregnant female detainee "who claims to be in labor or giving birth, appears to be in labor, or who is verified by medical personnel to be in labor. *Id.* at ¶ 60. Moreover, the 2010 G.O. specifically provided that "the use of leg shackles is prohibited during the two week period after labor." *Id.* at ¶ 59. Lastly, the CCJ amended their policy once again in February of

2011, barring the use of restraints on pregnant detainees at any stage of their pregnancy, absent unusual circumstances, and again barred the use of restraints during post-delivery recovery. *See* (Docket Entry No 279, p.6) (*citing* Pls.' Stmt. Facts, ¶ 27).

Therefore, Defendants not only took action to comply with the Illinois statute but Defendants actually enacted policies that were more expansive than Illinois law and resulted in the most progressive policy in the country. As a result, not only is the record devoid of any evidence of a "conscious disregard" for the health and safety of the pregnant detainees or the unborn child, the record is actually replete with examples of proactive steps taken by Defendants to protect the health and safety of the pregnant detainees and their unborn children. Therefore, Defendants respectfully request that this Court reconsider its ruling and grant summary judgment in Defendants' favor on Plaintiffs' state law claim.

II. **SUMMARY JUDGEMENT SHOULD BE GRANTED IN DEFENDANTS' FAVOR ON PLAINTIFFS' CONSTITUTIONAL CLAIMS.**

Defendants request that this Court reconsider its order denying summary judgment in favor of Defendants on Plaintiffs' constitutional claims. Plaintiffs have failed to set forth sufficient evidence that Defendants were either "aware" that the CCJ's restraint policy placed pregnant detainees at "risk", or that CCJ's restraint policy was not rationally related to legitimate penological interests and was so "brutal" and "gratuitously severe" as to result in punishment.

**Plaintiffs have failed to provide any evidence that CCJ policymakers were "aware" that the CCJ's restraint policy allegedly placed pregnant detainees at "risk."**

The Court applied the framework set forth in *Monell v. Department of Social Servs.,* 436 U.S. 658, 694 (1978) based on Plaintiffs' allegation that CCJ instituted a widespread practice of shackling pregnant detainees during labor, delivery and/or recovery following delivery. (Docket Entry No. 279 p.10). In applying this framework, the Court recognized that Plaintiffs must

present sufficient evidence raising a genuine issue of material fact that CCJ "[policymakers] must have been *aware of the risk* created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." (emphasis added) *Id.* at 11; *citing Thomas v. Cook County Sheriff's Dept.* 604 F.3d 293, 303 (7th Cir. 2008). However, the Court has failed to cite any evidence that CCJ policymakers were "aware of the risk" that the policy allegedly created for class Plaintiffs.

As argued *supra,* neither the named Plaintiffs nor the 100 purported class members suffered *any physical injuries* as result of the CCJ restraint policy. Moreover, Plaintiffs have failed to provide any evidence that Stroger or Cermak personnel informed CCJ policymakers that the restraint policy was being improperly implemented or that the policy placed pregnant detainee or their unborn children at risk of physical injury. Finally, not a single one of the purported class Plaintiffs filed a CCJ detainee grievance complaining that the CCJ policy was being improperly implemented or resulted in some sort of injury. *Id.* at ¶100.

As a result, Defendants are at a loss to understand how CCJ policymakers could be "aware of a risk" when they were never informed of that risk? How can CCJ policymakers be charged with knowledge of a risk when the measures they put in place (Cermak post-delivery interviews, CCJ detainee grievances, CCJ incident report) never informed them that the restraint policy had resulted in injuries or a risk on injuries? Therefore, Defendants respectfully request that the Court reconsider its ruling where Plaintiffs have utterly failed to provide sufficient evidence to create a genuine issue of material fact that CCJ policymakers were "aware of the risk" created by their restraint policy. *Thomas*, 604 F.3d at 303.

> **Plaintiffs have failed to provide any evidence that CCJ's restraint policy was not rationally related to security interests and was so "brutal" and "gratuitously severe" as to amount to punishment.**

9

Defendants respectfully request that this Court reconsider its ruling based on Plaintiffs failure to satisfy their "heavy burden" of proving that CCJ's restraint policy was not rationally related to a legitimate penological interest; *see Bell v. Wolfish*, 441 U.S. 520, 538 , 561 (1979) and was so "gratuitously severe" as to amount to punishment. *Hart v. Sheehan,* 396 F.3d 887 (7th Cir. 2005). The Court began its analysis by citing the Supreme Court's holding that the "proper question to guide the determination of the constitutionality of restrictive conditions in pretrial detainees was 'whether those conditions amount to punishment or the detainee.'" (Docket Entry No. 279 p.13); *citing Hart*, 396 F.3d at 891; *quoting Bell*, 441 U.S. at 535. The Court went on to cite *Hart* for the clarification that pretrial detainees have "an interest in being free from gratuitously severe restraints and hazards, while the detention facility has an interest in protecting the safety of detainees and guards and preventing escapes." *Id.* at 14; *citing Hart*, 396 at 893.

Nonetheless, the Court failed to cite *Bell's* requirement that courts provide "wide-ranging" deference to Jail administrators when determining whether their policies were rationally related to a legitimate penological interest. *Bell,* 441 U.S. at 547. The *Bell* Court reasoned that a "detention facility is a unique place fraught with serious security dangers," *Id.* at 559, the management of which "courts are ill equipped to deal with." *Id.* at 548. As a result, the Court cautioned that because "problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions…[p]rison administrators...should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547; *see Block v. Rutherford,* 468 U.S. 576, 589 (1984) (courts may not engage in "an impermissible substitution of [our] view on the proper administration of [a correctional facility] for that of the

experienced administrators of that facility"). The *Bell* Court went to hold that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of *substantial evidence* in the record to indicate that the officials have *exaggerated* their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." (emphasis added) *Id.* at 547-548.

In the present case, Defendants respectfully argue that the Court failed to provide CCJ policymakers the appropriate amount of deference when determining whether the restraint policy was constitutional. As the Court noted, there was undisputed evidence in the record that "detainees have attempted to escape while being transported to or from the hospital or while at the hospital, including pregnant detainees." (Docket Entry No. p.14). The Court further noted that "'maintaining institutional security and preserving internal order and discipline' are central goals of prison administration." *Id.* at 15; *citing Bell,* 441 U.S. at 546. The Seventh Circuit stated the same in *May v. Sheahan* when the court held that "[c]ertainly, shackling all hospital detainees reduces the risk of a breach of security and thus furthers a legitimate non-punitive government purpose." 226 F.3d 876, 884 (7th Cir. 2000).

Once Defendants had established that they had legitimate penological interest in preventing escape and ensuring the safety of correctional and medical personnel, it became Plaintiffs' "heavy burden" to establish that CCJ's policy was not rationally related to that interest and amounted to punishment. *Bell,* 441 U.S. at 538, 561. In response to this burden, the Court cited a lone CCJ employee's testimony that MOMs detainees were "not likely to be a flight risk" and the CCJ's policy of having a correctional officer guard all pregnant detainees while being treated at outside medical facilities as sufficient evidence to create an genuine issue of fact as to whether the policy was reasonably related to CCJ's security interest. (Docket Entry No. p.14).

11

Defendants maintain that this evidence is woefully insufficient - especially in light of Plaintiffs' heavy burden - to establish a genuine issue of material fact. *See Haslar v. Megerman,* 104 F.3d 178, 180 (8th Cir. 1997) ("A single armed guard often cannot prevent a determined, unrestrained, and sometimes aggressive inmate from escaping without resorting to force. It is eminently reasonable to prevent escape attempts at the outset by restraining hospitalized inmates to their beds.").

Moreover, Plaintiffs have failed to provide sufficient evidence to create a genuine issue of material fact as to whether CCJ's restraint policy was so "brutal" and "gratuitously severe" as to amount to punishment. *Id.* at 14; *citing Hart*, 396 at 892-893. As argued *supra*, Plaintiffs have failed to provide any evidence that CCJ's restraint policy resulted in injuries to class Plaintiffs, that Plaintiffs' complained to CCJ personnel regarding the policy, that Plaintiffs' filed any CCJ detainee grievances regarding the use of restraints, or that Stroger or Cermak personnel informed CCJ policymakers that the policy was "brutal" or "gratuitously severe" in nature. Therefore, Plaintiff has failed to provide any evidenced that CCJ's restraint policy was not rationally related to security interests and was so "brutal" and "gratuitously severe" as to amount to punishment.

**The Court failed to consider appellate court precedent and national correctional practices in determining whether CCJ's restraint policy was rationally related to a legitimate penological interest.**

The Court also failed to consider appellate court precedent and national correctional practices in determining whether CCJ's restraint policy was rationally related to a legitimate penological interest. In *Nelson* - the only appellate court decision addressing the use of restraints on pregnant detainees - plaintiff brought suit against the prison director alleging that he "failed to ensure that proper policies and customs were implemented with respect to the restraint of female inmates in labor" which allowed plaintiff to be shackled during the "final stages of labor" and

12

until approximately eight minutes before delivery. *Nelson v. Correctional Medical Services,* 583 F.3d 522, 526-527 (8th Cir. 2009)(en banc). The prison had the following policies in place at the time of the incident.

- "'Transportation officers are expected to use good judgment in balancing security concerns with the wishes of treatment staff and the medicine needs of the inmate.' The directive indicated that where security concerns and medical needs appeared to conflict transportation officers were required to contact superiors for guidance."
- "Pregnant inmates in the final stages of labor will not be restrained while in the delivery room giving birth, or at anytime the physician in charge determines that such application would be a health risk to the unborn child or the health of the inmates." *Id.* at 535.

In addressing plaintiff's claims, the appellate court issued an 11-0 decision holding that the "regulations, directives, and orders in the record suggest administrative concern for the health and safety of pregnant inmates." *Id.* at 536. The Eight Circuit made this finding despite the prison's policies allowing pregnant inmates to be restrained during transport to the hospital regardless of whether they were in labor. *Id.* at 535. The court also made this finding despite the policies allowing pregnant inmates to be restrained during latent and active labor, and only barring the use of restraints when inmates were in the "final stages of labor…while in the delivery room giving birth." *Id.*

In comparison, the CCJ restraint policies for pregnant detainees state the following:

- Restraint is to be done in a manner that will not unduly interfere with medical procedures and/or tests.
- Leg irons and handcuffs will secure the inmates (detainees) to the bed frame when the inmate (detainee) is not ambulating, being transported, being tested, in therapy or using the hospital restroom facilities.
- The External Operations Officer is to follow all hospital policies that do not conflict with departmental security rules and regulations. All conflicts between hospital policy and that of CCDOC policies and procedures are to be immediately reported to an External Operations Medical Unit Supervisor.
- In accordance with Illinois Statute 730 ILCS 125/17.5 (Pregnant Female Prisoners) **NO** handcuffs, leg irons or waist chains shall be used on a female inmate (detainee) who is in labor, this includes while being transported to a medical facility. (emphasis provided).

- Officers must use reasonable judgment and practice sound security measures during Life Threatening Situations. Officers will not hinder life saving treatment to detainee from medical personnel. Officers will contact their supervisors as soon as possible to inform of actions they had to take during medical situation with detainee and condition of detainee. (56.1(a) ¶ 50-51).

In comparing the policies approved by the *Nelson* court with the policies at issue in the present case, two things are made abundantly clear. First, CCJ's restraint policies were considerably more progressive because they barred the use of restraints on pregnant detainees that were in labor, not just the "final stages of labor." The CCJ's policies also barred the use of restraints on detainees that were in labor regardless of their location - including transport and outside the labor and delivery room - and not just "while in the delivery room giving birth." *Nelson*, 583 at 535-536. Second, there is no question that the *Nelson* court would have held that CCJ's restrain policies "suggest administrative concern for the health and safety of pregnant inmates" and were therefore constitutional. *Id.* at 536.

The Court also failed to consider national correctional practices when determining whether CCJ's policy was rationally related to security concerns and was so "brutal" and "gratuitously severe" as to amount to punishment. In December 2006, California was the only other State to bar the use of restraints during labor and delivery, while the Federal Bureau of Prisons ("BOP") along with twenty-three states corrections departments had policies *expressly allowing* the use of restraints on female detainees in those circumstances. (56.1(a)¶ 64). In fact, the CCJ's implementation of the MOMS Program; the CCJ's bar on the use of restraints on detainees during labor and delivery; the CJJ's 2008 policy of barring the use of restraints on MOMS detainees during the pendency of their pregnancy, labor, delivery, and recovery; all made the CCJ's restraint policy one of *the most progressive* in the nation. Again, Defendants are at a loss to understand how Plaintiffs have established a genuine issue of material fact as to whether

14

CCJ's restraint policy amounted to punishment when that policy was approved by an appellate court and deemed one of the most progressive in the nation? Therefore, Defendants respectfully request that the Court reconsider its ruling that Plaintiffs presented a genuine issue of material fact at to whether CCJ's restraint policy was rationally related to a legitimate penological interest and was so "gratuitously severe" as to amount to punishment.

## **CONCLUSION**

**WHEREFORE**, for the reasons stated above, Defendants respectfully requests that this Honorable Court reconsider its order of December 20, 2011 and grant summary judgment in Defendants' favor.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

/s/ *Michael L. Gallagher*
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Il 60602
(312) 603-3124

*/s/ Julia S. Bruce*
Julia S. Bruce
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Il 60602
(312) 603-5967